WO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) LITIGATION | ) **MDL 09-02119-PHX-JAT** ) **CV 10-1550-PHX-JAT** ) |
| THIS DOCUMENT RELATES TO: | ) **ORDER** ) |
| Bilyea v. DSL Service CO. et al., CV 10-01550-PHX-JAT | ) ) ) ) |

**I.     Parties**

The parties to this member case are Plaintiffs Thomas and Laurie Bilyea, and Defendants Central Mortgage Company, MERSCORP Holdings, Inc. and Mortgage Electronic Registrations Systems, Inc. (the latter two hereinafter will be collectively referred to as MERS).  (Doc. 2001-1 at 4).  Central Mortgage Company moved for summary judgment at Doc. 2049.  MERS moved for summary judgment at Doc. 1987.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when a moving part shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-

-1-

movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48.

## III.   Count I of the Amended Complaint

Following the Court of Appeals reversal (*In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772 (9th Cir. 2014) at Doc. 1820) of this Court's dismissal of the consolidated amended complaint in this case, there is one Count remaining. The remaining Count is a cause of action under A.R.S. § 33-420(A). Another Court in this district has summarized this cause of action as follows:

> …A.R.S. § 33-420(A) [] penalizes persons claiming an interest or lien in real property for knowingly recording a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid":
>
> > A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that *the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid* is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.
>
> (Emphasis added.) The broader statutory section, A.R.S. § 33-420, is entitled "False documents; liability; special action; damages; violation; classification."

*David A. Kester v. CitiMortgage,* CV 15-365, Doc. 37 (D. Ariz. March 31, 2016).

**IV.    Scope of the Mandate (Forgery)**

As to their claims, this Court previously recounted,

> [Plaintiffs'] amended complaint was dismissed on October 3, 2011. (Doc. 1602). Plaintiffs appealed dismissal of Counts I-VI to the Ninth Circuit Court of Appeals. The Court of Appeals reversed the dismissal of Count I and affirmed the dismissal of Counts II-VI. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014). Specifically, the Court of Appeals held that: (1) A.R.S. § 33-420 applies to Notices of Trustee Sale, Notices of Substitution of Trustee, and Assignments of a Deed of Trust, documents which Plaintiffs alleged to be fraudulent in the CAC; (2) Plaintiffs' claims are not timebarred; (3) Plaintiffs have standing to sue under A.R.S. § 33-420; and (4) Plaintiffs pleaded their robosigning claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 8(a). *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 781-784.

Doc. 2005 at 2.

More specifically, the Court of Appeals held that Plaintiffs had stated a claim that "the documents at issue are invalid because they are 'robosigned (forged).'" *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 783.[1]  As this Court discussed at length in the order denying class certification (Doc. 2005), this claim is the only claim of the 18-page Count One that was remanded to this Court.  Indeed, the Court of Appeals confirmed that all other theories potentially embedded in Count One were waived by Plaintiffs by not raising them in their first appeal.  (Doc. 2047)  Thus, Plaintiffs must survive summary judgment on this single claim.

As indicated above, the statute at issue creates a cause of action when someone files a document that is: 1) forged; 2) groundless; 3) contains a material misstatement or false claim; or 4) is otherwise invalid.  A.R.S. § 33-420(A).  However, the Court of Appeals' mandate could be construed as permitting Plaintiffs to prove only "forgery" as

---

[1] Specifically, with respect to the Bilyeas, the Court of Appeals stated: "For example, the CAC alleges that notice of the trustee's sale of the property of Thomas and Laurie Bilyea was 'notarized in blank prior to being signed on behalf of Michael A. Bosco, and the party that is represented to have signed the document, Michael A. Bosco, did not sign the document, and the party that did sign the document had no personal knowledge of any of the facts set forth in the notice.'" (Doc. 1820-1 at 24).

the means by which this statute was violated.  (Doc. 1820).  Indeed in a subsequent decision, the Court of Appeals stated

> "This court's reversal of Count I was limited to petitioners' claims of robosigning *and* forgery. To the extent petitioners now seek to challenge the MDL Court's dismissal of Count I as to allegations beyond robosigning *and* forgery, that challenge is waived because it was not raised in the appeal in *MERS I*."

(Doc. 2047 at 2) (emphasis added).

Accordingly, the Court will analyze "forgery"[2] specifically because it is possibly the only claim remaining before this Court.  The Court will then attempt to determine whether Plaintiffs are claiming A.R.S. § 33-420 was violated by Defendants in some other way.

## V.    MERS' motion for summary judgment

### A.    Forgery

MERS has identified Tonya Hill as the person who signed the Bilyeas' assignment and Lou Ann Howard as the person who signed the Bilyeas' corrective assignment. (Doc. 1987 at 7).  With respect to the allegations that either of these signatures was "forged", Plaintiffs have failed to create a disputed issue of fact.  Specifically, Plaintiffs rely on their handwriting expert as the basis for this allegation; however, the expert did not examine either Ms. Hill's signature or Ms. Howard's signature.  (Doc. 1987 at 10). Additionally, Ms. Howard testified that the signature on the corrective action was in fact hers.  (Doc. 1987 at 11).  Plaintiffs offer no evidence to rebut these facts, which are

---

[2]  Arizona's Criminal Statutes define forgery (as is relevant here) as follows: "A person commits forgery if, with the intent to defraud, the person: 1) Falsely makes, completes or alters a written instrument…."  A.R.S. § 13-2002.  While A.R.S. § 33-420 is not a criminal statute, it does include a criminal penalty; thus this Court will use this definition.

1  deemed admitted.[3]  On this record, Plaintiffs have no evidence of forgery and MERS is
2  entitled to summary judgment.

3          **B.      Plaintiffs' allegations against MERS**

4          The Court having concluded there is no disputed issue of fact on the only issue the
5  Court of Appeals reversed, namely forgery, the Court could enter judgment in favor of
6  MERS.   However, the Court will address "robosigning" because it was specifically
7  mentioned by the Court of Appeals and it is arguably within the scope of the mandate.

8          Reading Plaintiffs response to MERS' motion for summary judgment, it would
9  appear Plaintiffs believe "robosigning" is, by and of itself, a way to violate A.R.S. § 33-
10 420.  *See* (Doc. 2013 at 7).  It is not.  The statute lists four distinct and specific ways it
11 can be violated, and Plaintiffs' "robosigning" allegation must fall within one of these four
12 categories to even state a claim.[4]

13         Plaintiffs define robosigning as, "the actual process where people either forge
14 signatures on high volumes of foreclosure documents, or the actual person signing lacks
15 knowledge of the facts being attested to, and/or the documents are pre-notarized
16 (notarized in blank) or post-notarized (the notary didn't actually witness the signature)."
17 (Doc. 2013 at 7).[5] Only one of these means of robosigning, namely forgery, overlaps with
18 the ways to violate A.R.S. § 33-420.

---

19
20 [3] The Court has cited MERS' motion and accompanying statement of facts for the "facts"
   recounted in this paragraph because Plaintiffs did not respond to MERS's argument that
21 the documents are not forged and did not present any facts on this issue.  Accordingly
   MERS' facts are undisputed.

22 [4]  The Court notes that the Court of Appeals found Plaintiffs stated a claim as to
   "robosigning (forgery)".  This Court is aware that it is bound by that decision.  However
23 the Court of Appeals never suggested that robosigning standing alone, with no evidence
   of forgery or some other means of violating the actual language of the statute, would state
24 a claim.

25 [5]  MERS takes issue with Plaintiffs' definition of "robosigning" arguing that it has no
   basis in Arizona law.  (Doc. 2043 at 7).  This Court has previously recounted the
   problems that arise from the use of the word "robosigning", which does not appear to

1    In their response to MERS' motion for summary judgment in the section on

2    robosigning (Doc. 2013 at 7-8), Plaintiffs' counsel make no claims specific to the

3    Bilyeas.[6]   Accordingly, with Plaintiffs having no facts to support this claims, MERS is

4    entitled to summary judgment.

5    **C.     "False Assignment"**

6    In this Court's Order on the Robinson and Silvas cases, this Court analyzed

7    whether "robosigning" could violate A.R.S. § 33-420 as a kind of "false claim" (as

8    discussed above, a false claim is a specific way to violate the statute).   In responding to

9    MERS motion for summary judgment as to the Bilyeas, Plaintiffs specifically argue that

10   they are not pursuing a theory of forgery, or a theory of robosigning, but instead a

11   completely different theory.   Plaintiffs argue:

12              "… the document is still false, whether it was robosigned or not.
                The documents that were borne out of the false assignment are invalid,
13              whether they are robosigned or not.   *Steinberger v. McVey ex rel. Cnty of
                Maricopa*, 318 P.2d 419 [sic] (Ariz. Ct. App. 2014) (finding that mortgagor
14              had standing to challenge authority of defendants to conduct a trustee's sale
                based on allegations that documents recorded in connection with the sale
15              were false). (additional citation omitted)."

16   (Doc. 2013 at 8, n. 4).

17   Preliminarily, the Court notes that (like robosigning) a "false assignment" is not a

18   way to violate the statute.   However, assuming Plaintiffs intended to fit this argument

19   into one of "invalidity" (which is specifically listed in the statute), this new theory is

20   beyond the scope of the mandate.   (Docs. 1820-1 at 20-25 and 2047).   The Court of

21   _____

22   have a uniformly accepted legal definition.   (Doc. 2005 at 8, n.3).   Plaintiffs' citation for
     their proposed definition comes from a case in the District of Columbia.   (Doc. 2013 at
23   7).   MERS appears to be correct that this citation would have no relevance to the law of
     Arizona.

24   [6]   In responding to the motion for summary judgment against the Bilyeas, Plaintiffs'
     counsel included the response of another person, Mr. DeBaggis, to a different motion for
25   summary judgment.   For purposes of ruling on the Bilyeas' case, the Court has
     disregarded the arguments that were specific to Mr. DeBaggis.

Appeals reversed only this Court's dismissal of count one as to "robosigned (forged)"; it did not revive every conceivable way A.R.S. § 33-420 might have been implicated in Plaintiffs' 18-page count one.  *See* (Doc. 2047).  Accordingly, the Court will grant summary judgment to MERS on this theory.

> **D.      Conclusion on MERS' motion for summary judgment**

Because the Court has determined that MERS is entitled to summary judgment on all claims advanced by Plaintiffs in this member case, the Court need not reach MERS additional arguments for summary judgment in its favor including: 1) that, on the merits, the Corrective Assignment was not "False or Otherwise Invalid" (Doc. 1987 at 6); 2) that MERS did not cause the documents to be recorded (Doc. 1987 at 13-14); 3) that any "misrepresentations" in the documents were not material[7] (Doc. 1987 at 11-13); 4) that MERS is a valid beneficiary under Arizona law (Doc. 1987 at 4-6); and 5) that MERS did not know or have reason to know the documents were "false" (Doc 1987 at 14-15). MERS will be granted summary judgment as to the Bilyeas.

## VI.    Central Mortgage Motion for Summary Judgment

Central Mortgage moves for summary judgment on four bases: 1) that no documents are forged or robosigned; 2) no material misrepresentations were made; 3) the MERS system is not invalid; and 4) A.R.S. § 33-420(d) is inapplicable to a claim under A.R.S. § 33-420(A).  (Doc. 2049).

---

[7] Plaintiffs mischaracterize both the Ninth Circuit's opinion and this Court's prior Order by stating that both courts held that Plaintiffs do not need to prove materiality here. (Doc. 2013 at 8-9).  This Court did not hold this, and indeed could not, as the statute itself expressly requires that if the theory under which a plaintiff is proceeding is a "misstatement or false claim" such misstatement must be "material".  A.R.S. § 33-420.

### A.   Forgery and Robosigning

#### 1.   Forgery

In responding to Central Mortgage's motion for summary judgment, Plaintiffs concede they have no evidence of forgery.  (Doc. 2066 at 2).  Accordingly, Central Mortgage is entitled to summary judgment on this theory.

#### 2.   Robosigning

In responding to Central Mortgage's motion for summary judgment, Plaintiffs claim they have evidence of robosigning.  (Doc. 2066 at 2).  However, in the section of the response discussing robosigning, Plaintiffs make no factual allegation (nor offer any evidence) of robosigning.  After repeating the definition of robosigning from the District of Columbia quoted above, Plaintiffs' entire argument is:

> Defendant's argument that the lack of personal knowledge does not equate with robosigning misstates Plaintiffs' position related to robosigning.  The robosigners admit that they had no knowledge as to the assignment of the note as being a statement contained in the document. (PSOF ¶¶ 11, 19; see also Doc. 2012 ¶ 10).

(Doc. 2066 at 6).  These two sentences represent the totality of Plaintiffs' robosigning argument.

First, Plaintiffs cite no Arizona law explaining their argument that "they had no knowledge as to the assignment of the note as being a statement contained in the document."  Further the Court does not know what this allegation means, nor against whom it is being made.

Moreover, regarding Plaintiffs' citations to their statement of facts, Plaintiffs' statement of fact 11 states as follows:

> Lou Ann Howard conceded that the statement that MERS was assigning the note, which was made on the Corporate Assignment she signed (attached as Exhibit 37 to the CAC), was not true. See transcript of deposition of Lou Ann Howard taken August 13, 2015 filed as Consolidated Exhibit 36, 23:6-27:4. Ms. Howard's investigation of the

facts set forth in the Corporate Assignment were limited to looking at the Deed of Trust. See transcript of deposition of Lou Ann Howard taken August 13, 2015 filed as Consolidated Exhibit 36, 24:25-13.

CV 10-1550, Doc. 69 at 4.

First the Court will note that the statement of facts is not the appropriate place to make arguments in response to a motion for summary judgment. Plaintiffs' bizarre decision to make their arguments only in their statement of facts is highlighted by the fact that neither Lou Ann Howard nor Janice Davis, who is the topic of statement of fact 19, is ever mentioned in the actual response. Nonetheless, the Court has found and reviewed the 4 pages of deposition testimony of Ms. Howard cited to by Plaintiffs.[8] Ms. Howard testified that, although she had no specific recollection of the Bilyeas' assignment, her typical practice was to review all pertinent documents to any assignment and to verify all information in that particular assignment. (Howard Depo at 25, lines 5-9). Therefore, whatever "lack of knowledge" claim Plaintiffs are asserting is belied by the only evidence they cite.

As to the citation to statement of fact 19, statement of fact 19 is:

> Janice Davis did no investigation as to the accuracy of the representation that Central was the beneficiary as stated on the Substitution of Trustee recorded against the Bilyea property other than to check the servicing system electronic notes to see if there was an assignment recorded. (Transcript of Deposition of Janice Davis taken August 13, 2015, attached hereto as Exhibit 3 ("Davis depo."), 31:22-33:4.).

CV 10-1550, Doc. 69 at 5.

To begin, Plaintiffs do not mention who Janice Davis is, or whether she signed any document in the Bilyeas' case. Nonetheless, the Court has reviewed her testimony. In her testimony she states that before she signed documents related to a nonjudicial

---

[8] To aid any reviewing court, Plaintiffs failed to attach their exhibits to their statement of facts. The exhibits can be found at MD 09-2119, Doc. 2023; Ms. Howard's deposition specifically is at Doc. 2023-8, pages 69-70.

foreclosure proceeding she would: review the mortgage to determine the original balance, the borrower's name, the address, the date of the mortgage, the date it was recorded, the recording information, and the legal description.  (CV 10-1550, Doc. 69-3 at 10).  She would also review the serving system to see if an assignment of the mortgage had been recorded.  (*Id.*).  Based on this testimony, the Court again finds that whatever Plaintiffs are attempting to argue about lack of knowledge, it is belied by the very evidence they cite.  In other words, the Court does not know what additional knowledge or investigation Plaintiffs claim would be required (assuming Plaintiffs could cite an Arizona case that says such personal knowledge or investigation was even required).

Against this record, the Court will grant summary judgment to Central Mortgage on Plaintiffs' claims of robosigning.  Plaintiffs have offered no law or evidence to support this theory of liability.[9]

**B.     Plaintiffs' other allegations against Central Mortgage**

Plaintiffs argue that "[T]he Assignments and Substitution of Trustee are still false, whether robosigned or not.  The documents that were borne out of false assignments are invalid, whether they were robosigned or not."  Doc. 2066 at 6.  Thus, Plaintiffs are now attempting to survive summary judgment on a theory (presumably invalidity) other than robosigning (forgery).  As discussed above, the mandate limited Plaintiffs claims in Count I to robosigning (forgery).  As further discussed above, the Court of Appeals confirmed this Court's interpretation of the mandate.

Plaintiffs' dispute the Court of Appeals' interpretation of its own mandate.  Specifically, as quoted above, the Court of Appeals stated,

---

[9]  The Court has declined to address Plaintiffs' citation to Doc. 2012 at § 10 because that citation relates only to documents in the Robinsons' case, and has nothing to do with the Bilyeas.

> "This court's reversal of Count I was limited to petitioners' claims of robosigning and forgery. To the extent petitioners now seek to challenge the MDL Court's dismissal of Count I as to allegations beyond robosigning and forgery, that challenge is waived because it was not raised in the appeal in *MERS I*."

(Doc. 2047 at 2).  Plaintiffs' argue to this Court that the Court of Appeals misinterpreted its own mandate, stating:

> "As to Plaintiffs' arguments supporting the fact that Plaintiffs did not waive other claims related to the documents complained of in the CAC, see Motion for Reconsideration filed in Ninth Circuit Case No. 16-80001, incorporated herein by this reference. A copy of the motion is attached hereto as Exhibit 2 for this Court's and the parties' convenience.

(Doc. 2066 at 2, n.1).[10]  Central Mortgage points out in its Reply that the Motion for Reconsideration was denied by the Court of Appeals before Plaintiffs filed their Response.  (Doc. 2069 at 1, n. 2).

First, this Court agrees with the Court of Appeals interpretation of its mandate as explained above and in the Order at Doc. 2005.  Second, regardless of this Court's agreement, this Court cannot ignore the decision of the Court of Appeals, even if Plaintiffs believe it is wrong.  Therefore, this new theory of the case on which Plaintiffs now wish to proceed, namely invalidity, is beyond the scope of the mandate and Central Mortgage is entitled to summary judgment on this theory.

Moreover, even if this claim was properly before this Court, Plaintiffs cannot prove invalidity.  Specifically, Plaintiffs argue that MERS attempted to assign a note, which Plaintiffs argue MERS could not do.  Doc. 2066 at 5.  But in *Sitton v. Deutsche Bank Nat'l Trust Co.*, 311 P. 237, 243 ¶ 28 (Ariz. Ct. App. 2013), the Arizona Court of Appeals held that MERS could assign the note and deed of trust.  Therefore, Plaintiffs' argument fails.

---

[10]  The Court notes that the Motion for Reconsideration is not attached at Exhibit 2, and as far as the Court can tell, is not in this record.

Plaintiffs attempt to distinguish *Sitton* by arguing that *Sitton* premised its holding on a finding of lack of materiality; then Plaintiffs argue that materiality does not have to be shown in this case. (Doc. 2066 at 5). However, as this Court has already explained in its Order of April 20, 2016 (Doc. 2056 at 2, n.1), the Court did not "waive" the materiality requirement identified by *Sitton* for this case as a whole. Instead the Court found, only, that if the theory on which Plaintiffs were proceeding was a forgery, the statute does not require that the forgery be material.

Another Judge in this district in interpreting this same statute agreed that the word materiality grammatically modifies only misstatement and false claim in A.R.S. § 33-420; however, he went on to hold that the statute as a whole requires that any kind of violation be effectively material to be actionable. *David A. Kester v. CitiMortgage,* CV 15-365, Doc. 37 (D. Ariz. March 31, 2016). Specifically, the Court stated:

> Plaintiff reads the statutory text as allowing a penalty for *immaterial* flaws in a recorded document—that is, flaws that do not affect him. He notes that the statute lists various flaws disjunctively and that the word "material" only appears next to the words "misstatement or false claim," not the words "forged," "groundless," or "otherwise invalid." Plaintiff infers that materiality is not a necessary element of § 33-420(A) claims that a document is "forged," "groundless," or "otherwise invalid." Plaintiff's reading defies ordinary principles of statutory interpretation and common sense. The words "forged," "groundless," and "invalid" each imply a sense of materiality. One does not "forge" a document to no effect. A document cannot be "groundless" or "invalid" without reference to a meaningful external standard of "ground" or "validity." The reason the word "material" does not appear next to each of these words is that such drafting would be unnecessary and awkward. In contrast, the words "misstatement" and "false claim" do not imply a sense of materiality. Both words refer to innumerable communications within a document that the legislature would have no reason to punish, such as a "false claim" that the third page of a document is page two. For those words, "material" is a useful qualifier.
>
> Context underscores the need for materiality here. This is a punitive and criminal statute. Subsection A imposes a penalty of $5,000 or treble actual damages for each illegal document. Subsection C imposes an additional penalty of $1,000 or treble actual damages for willful failure to correct such documents upon request. Perhaps most gravely, subsection E classifies a violation of subsection A as a class 1 misdemeanor. These subsections "must be interpreted consistently" to the extent they use identical language. *Wyatt v. Wehmueller*, 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991). Thus,

Plaintiff's interpretation would make the recording of a document with inconsequential flaws not only unlawful and expensive, but criminal.

*Id.* at 7.  The Court went on to state:

> The most relevant case is *Sitton v. Deutsche Bank National Trust Co.*, 233 Ariz. 215, 311 P.3d 237 (Ct. App. 2013). There, like here, the plaintiff brought an action under § 33-420 based on recorded documents relating to the trustee's sale of her home. *Id.* at 216 ¶ 2, 311 P.3d at 238. She alleged, among other things, that assignments of a note and deed of trust contained misstatements and other defects. *Id.* at 217 ¶¶ 6-8, 311 P.3d at 239. The court agreed that the assignments misrepresented certain dates and the assignor's identity and that these misrepresentations "could be material" to certain future assignees. *Id.* at 221 ¶ 32, 311 P.3d at 243. But these misrepresentations were immaterial to *the plaintiff* because, as explained below, they "could have had no effect on [her] choice of actions." *Id.* Because the plaintiff "could not show that the assignments contained a *material* misstatement or false claim, she could not prevail on her § 33-420(A) claims." *Id.* at 222 ¶ 34, 311 P.3d at 244 (emphasis in original).
>
> Plaintiff contends *Sitton's* emphasis on materiality applies only to the "material misstatement or false claim" prong of § 33-420(A), not the "forged," "groundless," or "otherwise invalid" prongs. But the opinion itself is not expressly limited to any statutory prong. In fact, part of the opinion characterized the plaintiff as attacking the original lender's "authority to make *valid* assignments." *Id.* at 220 ¶ 27, 311 P.3d at 242 (emphasis added). And the opinion includes broad statements that seem applicable to the entire statute. *See, e.g., id.* at 216 ¶ 2, 311 P.3d at 238 ("We affirm because . . . A.R.S. § 33-420(A) does not support relief in favor of a person who could not have been harmed by a recorded misrepresentation."). *Sitton* thus suggests that materiality is a required element of any § 33–420(A) claim. Nothing in *Sitton* suggests that materiality is not a requirement.

*Id.* at 8-9.

Here, Plaintiffs seek to circumvent the materiality requirement in the same way as the Plaintiff in *Kester*; specifically by stating that the document is invalid, and arguing that a claim of invalidity circumvents any requirement of materiality.  As discussed above, as least as to forgery, this Court has agreed largely because the showing required for forgery under Arizona law is even higher than materiality.  *See* footnote 2 above.  As to invalidity, this Court is persuaded by Judge Wake's opinion that invalidity requires an impact on Plaintiffs for Plaintiffs to have a claim under the statute.

Here, Plaintiffs' expert claims to have found certain discrepancies in the chain of title.[11]  However, Plaintiffs make no argument that those discrepancies impacted them in any way.  Thus, even assuming the discrepancies exist, Plaintiffs have not shown how, consistent with *Sitton* and *Kester*, they would be actionable.  Therefore, even if this Court goes beyond the mandate and considers a claim of "invalidity" the Court finds that Central Mortgage is entitled to summary judgment.

### C.      Conclusion on Central Mortgage Motion for Summary Judgment

Because the Court has concluded that Central Mortgage Company is entitled to summary judgment for the reasons stated above, the Court need not reach Central Mortgage's additional arguments in favor of summary judgment, specifically: that the MERS system is not invalid; and that A.R.S. § 33-420(d) is inapplicable to a claim under A.R.S. § 33-420(A).

### VII.    Result

Based on the foregoing,

**IT IS ORDERED** that MERSCORP Holdings, Inc.'s and Mortgage Electronic Registration Systems, Inc.'s motion for summary judgment against the Bilyeas (Doc. 1987 & 56) is granted.

**IT IS FURTHER ORDERED** that Central Mortgage Company's motion for summary judgment (Doc. 2049 & 65) is granted.

---

[11]  Plaintiffs' expert report is at MD 09-2119, Doc. 2023-6 at 77-97.  Unfortunately, the expert report is incomplete and not in an admissible or even reliable format.  Specifically, the report claims to rely on (and include as exhibits) various documents from the public record.  However, Plaintiffs' counsel did not file the complete report, and omitted all exhibits from the report.  Therefore the Court cannot review the exhibits or confirm the findings/conclusions of the report.  As far as the Court has discerned, the documents are not elsewhere in the record.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment[12] in favor of these Defendants and against the Bilyeas accordingly.  The Clerk of the Court shall close CV 10-1550-PHX-JAT as a result of this Order.  The Clerk of the Court shall file a copy of this Order in both the MD case number, and the member case number listed above.

Dated this 29th day of July, 2016.

James A. Teilborg
Senior United States District Judge

---

[12] This Court has previously been questioned for not using Rule 54(b) language when entering judgment in a case in this multi-district litigation.  *Rollins v. Mortgage Electronic Registration Systems, Inc.,* 737 F.3d 1250 (9th Cir. 2013).  The Court has diligently undertaken to attempt to determine whether such language is necessary at this time.  First, the Court has presumed that all Defendants have moved for summary judgment relying on Plaintiffs' jurisdictional statement.  (Doc. 2001-1). Second, the Court has reviewed the docket of the original member case filed at CV 10-0045-PHX-ROS (because neither party has given the Court any updates as to the status of that case), and determined that the case is closed.  Based on these assumptions, the Court believes this Order completely resolves this member case.  However, if either party disagrees, that party shall move for Rule 54(b) language within 3 days, and list for the Court what claims and parties remain in this case (either before this Court or before another Court).